UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CR-155-FL-1

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| | ) | |
| CARLTON HANCOCK | ) | |

_____

This Cause comes before the Court upon Defendant's Motion to Suppress [DE-25], to which the Government responded [DE-30]. The matter was referred to the undersigned on November 23, 2010 and is ripe for adjudication. For the reasons stated herein, the undersigned recommends that Defendant's Motion to Suppress be denied.

**Factual Background**

On December 9, 2009, an officer with the Raleigh Police Department ("RPD") obtained an arrest warrant for Defendant for the charges of conspiracy and robbery. Later that day, the RPD officer, along with officers from the Cary Police Department, went to the apartment of Defendant's girlfriend, Marcia Ware, who lived in Cary. Although Ms. Ware was the sole occupant named in the lease, Defendant "frequently stayed" at Ms. Ware's apartment. [DE-25, p.2 n.1]. Upon arrival at the apartment, the officers asked Ms. Ware whether Defendant was inside. Ms. Ware told the officers Defendant was at his grandmother's house, and she offered to call Defendant's grandmother for the officers. The officers explained they had an arrest warrant for Defendant and requested permission to search the residence. After initially denying consent to the search, Ms. Ware agreed to allow the officers to enter and search the apartment to verify

that Defendant was not inside. Ms. Ware signed a "consent to search" form acknowledging her consent to the search of her apartment. [DE-30, Ex. A]. The consent form, signed and dated by Ms. Ware and witnessed by one of the officers, states: "I, Marcia Ware, do consent to the search of 1332 Wicklow Ct. Apt. B Cary, NC by a law enforcement officer. I am giving my consent to search knowingly and voluntarily, no threats or promises have been made to me." [*Id.*].

Upon searching the apartment, the officers discovered a marijuana plant with fluorescent lights hanging above it in the master bedroom closet. After confirming Defendant was not inside the residence, the officers asked Ms. Ware about the marijuana plant. Ms. Ware, who was not under arrest, told the officers the marijuana plant belonged to Defendant. Ms. Ware consented to a further search of the apartment. The officers then found a zipped-up duffle bag in a hallway closet. Inside the bag were a .22 caliber rifle and a wallet containing various identification cards belonging to Defendant. Ms. Ware denied knowledge of the duffle bag's contents.

The officers arrested Defendant at his grandmother's house later that day. While in custody, Defendant made statements regarding his knowledge of the rifle seized from Ms. Ware's apartment. Following his arrest, a records check indicated Defendant had sustained a felony conviction prior to December 9, 2009. On May 19, 2010, a federal grand jury returned a two-count indictment charging Defendant with possession of a firearm by a convicted felon and possession of a stolen firearm. [DE-1]. Defendant now seeks to suppress all physical evidence seized by law enforcement as a result of the December 9, 2009 search of Ms. Ware's residence, as well as all statements made by him subsequent to his arrest.

**Legal Background**

Defendant contends the evidence against him was obtained through an illegal search and seizure. The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. While "[t]he text of the Amendment suggests that its protections extend only to people in 'their' houses" a person "may have a legitimate expectation of privacy in the house of someone else." Minnesota v. Carter, 525 U.S. 83, 89 (1998). Thus, an overnight guest or a frequent visitor at an apartment may have a legitimate expectation of privacy in the apartment, even if he is not on the lease. *See* Minnesota v. Olson, 495 U.S. 91, 95-99 (1990) (overnight guest); Bonner v. Anderson, 81 F.3d 472, 475 (4th Cir. 1996) (frequent visitor).

The Fourth Amendment requires law enforcement officials to obtain a warrant before they conduct a search. Voluntary consent, however, is an exception to this warrant requirement. *See, e.g.*, Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) ("It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001) ("Valid consent is a well-recognized exception to the Fourth Amendment prohibition against warrantless searches."), *cert. denied*, 537 U.S. 1045 (2002). The burden is upon the government to demonstrate the voluntariness of an individual's consent. Schneckloth, 412 U.S. at 222.

Voluntary consent is based on the totality of the circumstances. *See, e.g.*, Schneckloth, 412 U.S. at 226-34; United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996). When assessing the totality of the circumstances, the district court considers such characteristics as age, maturity, education, intelligence, and experience of the individual giving consent, as well as the conditions under which the consent to search was given, such as the officer's conduct, the number of officers present, and the duration of the encounter. *See* Lattimore, 87 F.3d at 650. Whether the person giving consent knew he possessed a right to refuse consent is a relevant

factor, but the government need not demonstrate that the person knew of his right to refuse consent to prove that consent was voluntary. *See id*. Written consent serves as "a strong indication that consent was voluntary." United States v. Parks, No. 1 08 CR 291, 2009 U.S. Dist. LEXIS 17707, at *17 (M.D.N.C. Mar. 4, 2009); *see also* United States v. Boone, 245 F.3d 352, 361-362 (4th Cir.), *cert. denied*, 532 U.S. 1031 (2001); United States v. Foster, 654 F. Supp. 2d 389, 399 (E.D.N.C. 2009).

**Discussion**

Defendant's sole argument in support of his motion to suppress is that the officers lacked probable cause to believe Defendant was inside Ms. Ware's apartment at the time they conducted their search for him. Without probable cause to believe he was in the apartment, contends Defendant, the officers' entry was unreasonable and therefore unlawful. Defendant notes that Ms. Ware initially refused to consent to a search and informed the officers that Defendant was at his grandmother's house. As such, maintains Defendant, the officers had no lawful reason to enter the residence. Defendant's argument fails on several grounds.

Assuming *arguendo* that he has standing to challenge the search, Defendant's contention that the officers lacked probable cause to believe he was inside the apartment directly contradicts his assertion that he "frequently stayed at [Ms. Ware's] apartment." [DE-25, p.2 n.1]. Defendant's position is untenable. In order to have standing to challenge the search, Defendant must show he had an expectation of privacy in Ms. Ware's apartment. Minnesota, 525 U.S. at 88; Bonner, 81 F.3d at 475. If indeed he "frequently stayed" at Ms. Ware's apartment, as he maintains, the officers attempting to effect the arrest warrant would have had exceedingly reasonable grounds to believe Defendant was at Ms. Ware's apartment. Defendant cannot have his cake and eat it, too.

4

Notably, Defendant does not contend the officers lacked probable cause to initially believe he was at Ms. Ware's apartment, but he nonetheless argues that, upon being told by Ms. Ware that he was at his grandmother's house, the officers no longer had reasonable grounds to believe Defendant was inside. However, the officers' reasonable belief did not evaporate merely because Ms. Ware stated Defendant was not at home. Reasonable and diligent law enforcement officers cannot assume that every citizen whom they encounter will always tell the truth—indeed, quite the opposite. Apparently Defendant would have this Court require police officers to accept at face value everything told to them, despite the officers' experience and all common sense to the contrary. As Defendant's girlfriend, Ms. Ware presumably had an interest in his well-being and thus would have been motivated to be less than truthful to the officers seeking to arrest him. The officers could therefore reasonably suspect Ms. Ware's assurances regarding Defendant's whereabouts.

Moreover, the officers obtained valid consent to search the residence, and Defendant makes no argument to the contrary. As an occupant and sole lessee, Ms. Ware had full authority to consent to a search of the apartment. United States v. Matlock, 415 U.S. 164, 171 (1974). Ms. Ware consented to the search orally and in writing. Boone, 245 F.3d at 362 ("Written consent supports a finding that the consent was voluntary."). Nothing suggests Ms. Ware's age, maturity, education, intelligence, or experience rendered her consent to the search invalid. *Id.* at 361-62. Nor does Defendant contend that the officers' conduct, the number of officers present, or the duration of the encounter was coercive.[1] At the time of consent, Ms. Ware was in her own home, neither detained nor arrested. Ms. Ware obviously understood she could refuse consent,

---

[1] In his statement of the facts, Defendant relates that as the officers moved closer to the door of her apartment, Ms. Ware "noticed that at least one of the officers put his hand on his holstered service weapon." [DE-25, p.2]. Insofar as Defendant implies through this assertion of fact that consent was coerced, there is no indication Ms. Ware felt threatened or otherwise compelled to consent to the search, and certainly this fact, standing alone, does not invalidate the consent to search.

5

as evidenced by her initial refusal to allow the officers to enter her apartment. Because Ms. Ware gave valid consent to the search, the officers' warrantless entry disturbed no constitutional precedent.

**Conclusion**

Because the officers conducted a lawful search pursuant to voluntary consent, the seizure of the evidence against Defendant did not violate his rights under the Fourth Amendment. The undersigned therefore recommends that Defendant's Motion to Suppress [DE-25] be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, December 9, 2010.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE